UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DEVIN G. NUNES,

        Plaintiff,

  -v-                                                       No. 20 CV 03976-LTS-OTW

CABLE NEWS NETWORK, INC.,

        Defendant.

-------------------------------------------------------x

<u>Memorandum Opinion And Order</u>

        Plaintiff Devin G. Nunes ("Plaintiff" or "Nunes") commenced this action in the Eastern District of Virginia against Cable News Network, Inc. ("Defendant" or "CNN"), asserting claims for defamation <u>per se</u> and conspiracy to defame. Plaintiff alleges that CNN (1) intentionally published and disseminated a demonstrably false news article and related reporting about him, and (2) engaged in a conspiracy to defame him and to damage his personal and professional reputation. (<u>See</u> Amended Complaint, docket entry no. 18 (the "AC")).[1] CNN moved to dismiss the AC for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (<u>See</u> docket entry no. 22, the "Motion".) CNN also moved to transfer the venue of this case to this District. The latter motion was granted (<u>see</u> docket entry no. 27), and the Motion remained pending when the case was transferred. The

---

[1]     Plaintiff commenced this action by filing his Complaint on December 3, 2019. (<u>See</u> docket entry no. 1.) Defendant filed an initial motion to dismiss the Complaint on January 17, 2020. (<u>See</u> docket entry no. 13.) Plaintiff subsequently filed his AC, and the court denied the initial motion to dismiss as moot. (<u>See</u> docket entry nos. 18-19.) Defendant thereafter filed this second motion to dismiss, the briefing for which overlapped with briefing on Defendant's motion to transfer the case. (<u>See</u> docket entry nos. 14-26.)

Court has reviewed all of the submissions in connection with the Motion, including the opposition and reply papers (respectively, docket entry no. 25, the "Opp."; docket entry no. 26).

This case was transferred to the Southern District of New York pursuant to 28 U.S.C. section 1404.  (See docket entry nos. 27-28).  Thereafter, the parties appeared before Magistrate Judge Ona Wang for an initial case management conference and were ordered to submit supplemental Motion briefing to address the question of choice of law.  (See docket entry no. 40).

The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332.  The Court has considered all of the parties' submissions and, for the reasons stated below, Defendant's motion to dismiss the AC is granted.

## BACKGROUND

The following recitation of facts is drawn from the AC, and from documents relied upon by, integral to, or incorporated by reference into the AC.

Plaintiff Nunes, a member of the United States House of Representatives, is a citizen of California.  He was born and raised in Tulare County, graduated from "Cal Poly San Luis Obispo," and has represented California for over twenty years in different positions of public office.  Nunes has served in the House of Representatives since 2003 and currently represents California's 22nd Congressional District.  (AC ¶ 7.)  Nunes is the Ranking Member of the House Intelligence Committee, which oversees matters pertaining to national security.  (Id. ¶¶ 7, 51(f), (h), (k)).  In his capacity as the Ranking Member of that committee, Nunes played a leading role during the House of Representatives' first impeachment inquiry into U.S. President Donald J. Trump, which was announced on September 24, 2019.  (Id. ¶¶ 20, 51(k).)

CNN operates a digital media network that publishes and disseminates news through a variety of platforms. CNN's network includes television broadcasts, the publication of articles online, and the operation of multiple social media accounts. Through these multimedia outlets, CNN delivers news every hour of every day to millions of readers and viewers worldwide. (Id. ¶ 8.)

On November 22, 2019, CNN published an article written by reporter Vicky Ward. (Id. ¶ 34.) The article reported that Joseph Bondy, a lawyer for Lev Parnas, an indicted former associate of Rudy Giuliani, had stated that Parnas was willing to testify to Congress that Nunes had traveled to Vienna and met with former Ukrainian Prosecutor General Victor Shokin. (Motion at Ex. A, the "Ward Article".) According to the article, Parnas was willing to testify that Nunes' meetings were to discuss "digging up dirt" on former Vice President Joe Biden. (Id.)

At the same time that the article was published on CNN's digital network, Ward appeared as a guest on a CNN news program, Cuomo Prime Time, hosted by news anchor Chris Cuomo. (AC ¶ 37.) Ward and Cuomo discussed the article and allegedly "published further defamatory statements" about Nunes' involvement in "looking for dirt on the Bidens." (Id.) Ward's article was also disseminated broadly through both CNN organizational social media accounts, such as the accounts for CNN International and CNN Politics, and the individual accounts of CNN employees. (Id. ¶ 38.)

## DISCUSSION

Defendant moves to dismiss the AC, arguing that Plaintiff has failed to state a claim because, by reason of his non-compliance with the retraction demand requirements of a California statute, he is limited to seeking special damages, and he has failed to plead such damages sufficiently. A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the

complaint must plead "'enough facts to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A court must "accept[] all factual allegations as true," but gives "no effect to legal conclusions couched as factual allegations." Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation marks omitted).

Applicable Law

Defendant argues that California law governs his defamation and conspiracy causes of action, and that Plaintiff's failure to comply with statutory notice and retraction demand requirements codified under Cal. Civ. Code § 48a(a) constrains his ability to pursue the monetary claims that he has asserted here. Nunes, on the other hand, contends that the laws of New York, Virginia or the District of Columbia govern the underlying causes of action because the publication was made in those jurisdictions and his injuries were concentrated in one or more of them.

The parties do not dispute that, because Nunes initiated this lawsuit in Virginia, Virginia's choice of law rules govern the Court's determination as to the substantive state law that applies in this case.[2] In determining the applicable law in tort actions generally, Virginia courts follow the doctrine of lex loci delicti. Under the lex loci doctrine, "the law of the place of the wrong governs all matters related to the basis of the right of action." Dreher v. Budget Rent-A-Car Sys., Inc., 634 S.E.2d 324, 326 (Va. 2006). In defamation cases, that place is typically

---

[2] Where a case has been transferred pursuant to 28 U.S.C. § 1404(a), the transferee court conducts the same choice of law analysis that the transferor court would have conducted. See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 154 (2d Cir. 2019).

defined as "the state where the content at issue was published." Gilmore v. Jones, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019). The place of publication, in the defamation context, is where the statements at issue are "communicated to a third party" and thus "seen or heard by non-parties," as opposed to where the statements may have been written. See Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 915 (E.D. Va. 2004) (holding that defamatory communication is published when first read and understood by a third party, thus triggering the statute of limitations); Meadows v. Northrop Grumman Innovation Sys., Inc., 436 F. Supp. 3d 879, 887 (W.D. Va. 2020) (finding that "defamation that is sent via email is published at the location the email is opened and read").

In cases that involve the instantaneous, multistate publication and broadcasting that the Internet, social media, and other forms of mass communication facilitate, determining the "place of the wrong" raises complex questions as to where publication occurs. The Virginia Supreme Court has not addressed how to determine the "place of the wrong" in such multistate defamation cases. Accordingly, the Court must predict how the Virginia Supreme Court would rule on this issue. See Gilmore, 370 F. Supp. 3d at 664 (citing Horace Mann Ins. Co. v. Gen. Star Nat. Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008)).

In Gilmore, a district court in the Western District of Virginia, applying Virginia choice of law principles, considered the issue of the place of the wrong in the context of a claim arising from multi-state internet publication of allegedly defamatory material and predicted that, in such a case, the Virginia Supreme Court would define the place of publication as the state where the plaintiff is most injured as a result of the allegedly defamatory statements. Gilmore, 370 F. Supp. 3d at 665-66. The Gilmore court explained that Virginia applies the doctrine of lex loci delicti in determining the law applicable to tort actions such as ones for defamation. The

court recognized that the "settled rule" is that the law of the place of the wrong governs in a multistate tort action and that, "in actions involving allegedly tortious publications, Virginia courts define the place of the wrongful act as the state where the content at issue was published." Id. at 664.  "Publication," in this context, generally "occurs when the allegedly tortious content is 'communicated to a third party' so as to be 'heard and understood by such person.'" Id. Recognizing that the Supreme Court of Virginia had not yet addressed the determination of the place of the wrong in circumstances, such as internet publication or information dissemination, in which the allegedly defamatory information is "published" in multiple jurisdictions, the Gilmore court looked to the principles animating Virginia's traditional interpretation of lex loci delicti and practical considerations in predicting how Virginia's Supreme Court would apply the principle in a multistate Internet tort case.  First, it stated that the "underlying rationale for Virginia's traditional interpretation of lex loci delicti as the place of the tortious action is that approach's 'uniformity, predictability, and ease of application.'" Id. at 665.  In cases involving Internet publications, an approach that could apply the law of all of the places where third parties may be been exposed to the information, or the place of upload, or other locations connected with the dissemination of the information, disserves all three of these considerations.  See id. ("If 'publication' is defined as the place where content is communicated to third parties, it is unclear whether 'publication' of online content occurs in the state where an individual uploads content, the state where the relevant media platform or publication maintains headquarters, the state where a website's servers are located, or the state where third parties actually view the content . . . ."). Applying the traditional definition of publication would thus "inevitably require the cumbersome application of a patchwork of state law." Id.  Having considered "the underlying values animating the Supreme Court of Virginia's approach to lex loci delicti and the complexity

of online publication[,]" the Gilmore court held that the Supreme Court of Virginia, in order to promote the core values of uniformity, predictability, and ease of application, would define the "place of the wrong" in that internet publication case as "the state where the plaintiff is primarily injured as a result of the allegedly tortious online content." Id. at 666.  The Gilmore plaintiff alleged, and there was apparently no dispute, that the place of the brunt of the injury was Virginia, where the plaintiff was domiciled and where he lived and worked.  Id.  Accordingly, the court applied Virginia law in determining all of the plaintiff's claims.

In this district, the court in Hatfill v. Foster applied Virginia choice of law principles to multistate libel claims against a publisher and republisher of an allegedly false article.  415 F. Supp. 2d 353, 364-65 (S.D.N.Y. 2006) (McMahon, J.).  The Hatfill court observed that, although the Virginia Supreme Court had not specifically addressed where the "place of the wrong" would be in the context of multistate publications, "in practice, lex loci jurisdictions have shown remarkable consistency in how to resolve the question," looking to "the law of the jurisdiction where the plaintiff suffered the greatest injury." Id. at 364.  Usually, that district is the one in which the plaintiff was domiciled, and the court held that the Virginia Supreme Court would "follow the lead" of such jurisdictions and define the place of injury as the district of the plaintiff's domicile, absent "strong countervailing circumstances." Id. at 365.

Here, the Defendant argues that Nunes was primarily injured in California because it is the state of his domicile.  Nunes is a citizen of California and was born, raised, and educated there.  He has represented California citizens as an elected Member of Congress since 2003.  Accordingly, the Defendant contends, any damage to Nunes' personal and professional reputation would primarily occur in California, thus bringing into play California's retraction demand requirement and the ramifications of failure to comply with it.

Nunes makes two arguments against the application of California law, and in support of the application of either New York or Virginia law. In his supplemental briefing, Plaintiff argues that New York law should apply because CNN has a substantial presence there and Ward and Cuomo, who are generally located in New York, were present there when the statements were made. (See docket entry no. 43 at 5-6.) As a result, Plaintiff argues, the allegedly defamatory statements should be deemed to have been published exclusively in New York. As explained above, however, Virginia's choice of law rules govern and, in Virginia and other lex loci jurisdictions, the place of publication is normally the location where statements are heard and understood. See Katz, 332 F. Supp. 2d at 915. In a multistate, mass media defamation case, it is impractical to determine that specific location; lex loci jurisdictions typically look in multistate circumstances to the place where the plaintiff suffers the most harm, which is usually held to be the state in which the plaintiff is domiciled, presumably based on an assumption that the information would be of most interest to third parties in that state and would be opened and read by a substantial number of persons there. Accordingly, the governing choice of law rule does not contemplate the application of New York state law based on the location of the reporters and the news organization.

In his opposition brief, Plaintiff argues that Virginia law should apply to Plaintiff's claims because the statements at issue were "published" in Virginia. As support, Plaintiff cites, but does not discuss in detail, a recent federal district court case predicting that the Virginia Supreme Court would define the "place of the wrong" as "the place where the act of publication to the Internet occurred." (Opp. at 9-10 (citing Cockrum v. Donald J. Trump for President, Inc., 365 F. Supp. 3d 652 (E.D. Va. 2019), case dismissed, No. 19-1398, 2019 WL 5152518 (4th Cir. July 5, 2019).)) The Cockrum court, in a case involving the unauthorized

revelation of private information through WikiLeaks, rejected a focus on the plaintiff's domicile as resembling a "most significant relationship" analysis, and instead held that the Supreme Court of Virginia would likely hold that the location from which the information was posted to WikiLeaks was the place of publication. Because that place of publication could not be determined, the Cockrum court defaulted to the substantive law of the forum – Virginia. Id. at 669-70. Cockrum's holding appears to be in tension with the "vast majority" of lex loci delicti jurisdictions, which "look to the law of the jurisdiction where the plaintiff suffered the greatest injury." Hatfill, 415 F. Supp. 2d at 364-65. Moreover, Plaintiff's Cockrum-based argument assumes that there would be one place of publication notwithstanding the multiple platforms at issue here, and thus disregards the "cumbersome application of a patchwork of state law" that would be implicated were the place of wrong to be defined as the place where the publication occurred, whether publication is defined as internet upload or receipt of the information by third parties, in a "multi-state Internet tort case[,]" particularly one that involves allegedly defamatory statements "published simultaneously in multiple state jurisdictions" by way of an evening news program and a variety of digital and social media platforms. Gilmore, 370 F.Supp.3d at 665. The Court concludes that looking to a plaintiff's domicile in determining the governing law is consistent with the sound approach followed by most lex loci jurisdictions, as well as with the goals of "uniformity, predictability, and ease of application" that underpin the doctrine. Id.

    Plaintiff further argues that, if the Court were to look to the place where he suffered the greatest injury, the laws of either Virginia or the District of Columbia should apply because that is where he performs his role overseeing the activities of the Intelligence Community. (See Opp. at 10 n.5.) Nunes does not proffer any additional facts that support his conclusory statement that he suffered substantial injury in either Virginia or District of

Columbia, much less a greater injury there than in the home state that sends him to Congress as the representative of his district. His Amended Complaint alleges that he is a citizen of California and details his long family ties with, and extensive political service in and for, the state of California and its citizens. (See AC ¶ 7.)

Having considered persuasive authority and the legal and practical considerations underpinning Virginia's application of the lex loci doctrine, the Court concludes that the Virginia Supreme Court would likely "follow the lead of other lex loci jurisdictions and pinpoint the place of greatest harm in this multistate libel case in the district where the plaintiff was domiciled, absent strong countervailing circumstances." Hatfill v. Foster, 415 F. Supp. 2d at 365. Plaintiff has not alleged any facts or "strong countervailing circumstances" that militate against finding that Nunes was injured primarily in California, the state of his domicile, and where he stands for election. He has proffered no facts from which the Court could find that there are extraordinary circumstances indicating that he suffered greater harm, i.e., that the allegedly defamatory material garnered greater third-party attention in a single jurisdiction other than his home state. Accordingly, the Court finds that California law governs Plaintiff's claims.

Plaintiff's Compliance with California Law

The California Civil Code limits a defamation plaintiff's recovery to special damages unless the plaintiff makes a specific written demand for a retraction within a short period of time. Specifically, the relevant California statute provides that, "[i]n any action for damages for the publication of a libel in a daily or weekly news publication, or of a slander by radio broadcast, plaintiff shall only recover special damages unless a correction is demanded and is not published or broadcast, as provided in this section." Cal. Civ. Code § 48a(a). The plaintiff is required to serve upon the publisher "a written notice specifying the statements claimed to be

libelous and demanding that those statements be corrected." Id. "The notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous." Id.

The AC, which was filed over two months after the original release of the Ward Article and the Cuomo Prime Time interview, does not allege that any written request was served upon CNN, much less a request that identified the statements that Nunes may have considered defamatory. Nor is there any allegation or proffer that such a demand was served at any time within the twenty-day period after Plaintiff became aware of the article and television program. Accordingly, Defendant argues, Plaintiff is limited in this case to a potential recovery of special damages. Cal. Civ. Code § 48a(a). Defendant further contends that Plaintiff's Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the AC does not plead plausibly that Plaintiff suffered any special damages and thus fails to state a defamation claim upon which relief may be granted.

Plaintiff advances four arguments against the application of the retraction statute to his defamation claims. First, he contends that the retraction statute does not apply to the article and television news program at issue because the statute on its face is limited to "daily or weekly news publications [and] radio broadcasts." (Opp. at 6.) This argument is contrary to the plain language of the retraction statute, which specifically defines "'[d]aily or weekly news publication' [to] mean[] a publication, either in print or electronic form, that contains news on matters of public concern and that publishes at least once a week." Cal. Civ. Code § 48a(d)(5).

Given that CNN publishes multiple times a day and published the article in question in electronic form, this argument against the statute's application is without merit.[3]

Next, Plaintiff argues that the retraction statute does not apply to claims of defamation per se. Under common law, statements that constitute defamation per se include: 1) statements that "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished"; 2) statements "which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment"; and 3) statements that prejudice such person in his profession or trade. Tronfeld v. Nationwide Mut. Ins.Co., 272 Va. 709, 713 (2006). In support of his argument against the application of the statute to Plaintiff's claims, Plaintiff cites inapposite cases that do not involve the retraction statute. See Todd v. Lovecruft, No. 19-CV-01751-DMR, 2020 WL 60199, at *20 (N.D. Cal. Jan. 6, 2020) (holding, in case involving application of anti-SLAPP statute to allegations of sexual misconduct, that common law elements of defamation cause of action did not require plaintiff to plead special damages for claim of defamation per se); Clark v. Hidden Valley Lake Ass'n, No. 16-CV-02009-SI, 2018 WL 3069285 (N.D. Cal. Apr. 18, 2018) (upholding damages verdict despite lack of proof of actual damages, where plaintiff had prevailed on claims of defamation per se). Neither of these cases involved news media publication of the allegedly defamatory material, nor did any of the authority Plaintiff cited in this connection construe the retraction statute.

---

[3] Furthermore, the Civil Code defines "radio broadcast" to "include both visual and sound radio broadcasting" for purposes of the defamation liability provisions. Cal. Civ. Code § 48.5(4).

The retraction statute expressly applies to "any action for damages for the publication of a libel in a daily or weekly news publication," providing that "plaintiff shall only recover special damages unless a correction is demanded and is not published or broadcast," and does not distinguish or exempt claims of defamation per se. Cal. Civ. Code § 48a(a). Subdivision 48a(b) of the statute permits claims for "general, special and exemplary damages" only if a retraction is demanded timely in compliance with its provisions and no correction is made.[4] California courts have applied the damages limitation provision of the retraction statute to defamation per se claims against media agencies, and the Court finds no basis to do otherwise here. See, e.g., Kalpoe v. Superior Court, 166 Cal. Rptr. 3d 80 (Cal. Ct. App. 2013) (upholding application of statutory limitation to scope of damages evidence in support of claims including defamation per se in case involving television program, where retraction was not demanded); Anschutz Entm't Grp., Inc. v. Snepp, 171 Cal. App. 4th 598, 642 (2009) (upholding order striking defamation per se claim pleading only general damages in connection with television broadcast where retraction was not demanded in compliance with statute; stating that "the purpose of Civil Code section 48a, subdivision (1) is to restrict a defamation plaintiff's right to recover general damages.").[5]

Plaintiff further argues that the California retraction statute is a matter of procedure and that, therefore, the law of the transferor forum, Virginia, should apply instead. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting

---

[4]  Subdivision (d)(2) of Civil Code section 48a defines special damages as "all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a(d)(2).

[5]  On January 1, 2016, the language of the California Code was changed to rename section 48a, subsection (1) as the current subsection (a).

in diversity apply state substantive law and federal procedural law."). In his opposition to CNN's motion to dismiss, Plaintiff relies on a handful of dictionary definitions to support this argument, asserting that the retraction statute is procedural because it establishes "a manner of proceeding" or a "specific method or course of action." However, courts in both Virginia and this district have agreed that "limits on recovery are substantive law." Spring v. United States, 833 F. Supp. 575, 579 (E.D. VA. 1993); see also Price v. Stossel, No. 07 CV. 11364, 2008 WL 2434137, at *6 n.12 (S.D.N.Y. June 4, 2008) (noting that "[a]t least one court in this District [ ] has found the [California retraction] statute applicable in diversity actions . . . and another has implied that the statute is substantive . . . .")); Guanghong Int'l (HK) Ltd. v. Ultimate Fin. Sols. LLC, No. 11 CIV. 4019 RMB KNF, 2012 WL 1228085, at *4 (S.D.N.Y. Mar. 26, 2012), report and recommendation adopted sub nom. Guanghong Int'l (H.K.) Ltd. v. Ultimate Fin. Sols. LLC, No. 11 CIV. 4019 RMB KNF, 2012 WL 2402902 (S.D.N.Y. June 26, 2012) ("State substantive law governs damages issues in a case over which a federal court exercises diversity jurisdiction."). Because the retraction statute is a substantive law limiting a plaintiff's recovery on a defamation claim, it is applicable here. Plaintiff's dictionary-based argument is not persuasive.

Finally, Plaintiff argues that the retraction statute is inapplicable because it violates Virginia's public policy by "impos[ing] an added statutory requirement in defamation cases that has never been adopted by the Virginia General Assembly." (Opp. at 8.) Plaintiff offers nothing more to support this assertion, and does not even specify the public policy that he believes would be violated by the application of California law. A mere difference between the respective defamation laws of Virginia and California "does not, ipso facto, justify refusal to adhere to comity principles." Chesapeake Supply & Equip. Co. v. J.I. Case Co., 700 F. Supp.

1415, 1421 (E.D. Va. 1988).  The Virginia Supreme Court held many decades ago that "[t]here must be something immoral, shocking to one's sense of right, in order that comity be denied." Tate v. Hain, 25 S.E.2d 321, 325 (Va. 1943).  There is nothing "immoral" or "shocking" about the California retraction statute; the Court therefore finds no comity-based reason to decline to apply the California to Plaintiff's defamation claims.

For these reasons, the Court finds that Cal. Civ. Code § 48a(a) is applicable to Plaintiff's defamation claim.  Because Plaintiff failed to comply with the statutory notice and retraction demand requirements set forth therein, he must allege special damages and is not entitled to seek any other type of damages.

Pleading Special Damages

Defendant argues that the AC fails to state a claim upon which relief may be granted and must be dismissed because it does not sufficiently plead special damages, as required under California's retraction statute.  Federal Rule of Civil Procedure 9(g) requires that, "[i]f an item of special damage is claimed, it must be specifically stated."  Fed R. Civ. P. 9(g).  "The form in which claims for special damages must be stated is a procedural question" governed by Rule 9(g).  Hogan v. Wal-Mart Stores, Inc., 167 F.3d 781, 783 (2d Cir. 1999).  "The primary purpose of Rule 9(g) is one of notice, both to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint."  Nat'l R.R. Passenger Corp. v. Arch Specialty Ins. Co., 124 F. Supp. 3d 264, 281 (S.D.N.Y. 2015) (internal quotation marks omitted).

Plaintiff's AC fails to meet the minimum pleading requirements for special damages established by Rule 9(g).  Plaintiff's original Complaint, filed on December 3, 2019, made no mention of special damages at all.  (See docket entry no. 1.)  CNN moved to dismiss the

Complaint on substantially the same grounds as those presented in this Motion, thus alerting Plaintiff to CNN's arguments and to a potentially critical deficiency in the Complaint. (See docket entry no. 15.) Thereafter, Plaintiff amended his Complaint to claim he has "suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, special damages, costs, and other out-of-pocket expenses, in the sum of $435,000,000, or such greater amount as is determined by the Jury." (AC at ¶ 52.)

While the AC uses the phrase "special damages," refers to "out of pocket expenses," and includes a dollar amount that encompasses the entire array of damages claims, it provides no further indication of the basis or quantum of any special, or economic, element of his damages claim. A general "monetary demand stated in round numbers is generally not considered to reflect the specific damages required of special damages." Marino v. Jonke, No. 11 CV 430 VB, 2012 WL 1871623, at *10 (S.D.N.Y. Mar. 30, 2012). Nor do such general allegations explain what the damages comprise or how they are calculated, denying both Defendant and the Court information as to the substance of the complaint. See Barrett v. U.S. Banknote Corp., No. 91 CIV. 7420 (RPP), 1992 WL 232055, at *8 (S.D.N.Y. Sept. 2, 1992) (holding that special damages allegation that proffered neither a specific damages figure nor a method of computing the damages was insufficient). In short, "[d]amage claims of this generality do not constitute adequate pleading of special damages[,]" id., and "without an allegation of special damages, the [AC] does not allege a legally sufficient cause of action [for defamation] under California law." King v. Am. Broad. Companies, Inc., No. 97 CIV. 4963 (TPG), 1998 WL 665141, at *4 (S.D.N.Y. Sept. 28, 1998) (dismissing Plaintiff's defamation

claims where he failed to both comply with the California retraction statute and allege special damages in the complaint).

Plaintiff's defamation claim thus fails to meet the requirements of Rule 9(g) and fails to state a claim upon which relief may be granted, warranting dismissal pursuant to Rule 12(b)(6). "[F]ormulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

Conspiracy Claims

Finally, the Defendant argues that Plaintiff's conspiracy claims must also be dismissed because the AC fails to plead facts sufficient to allege plausibly that CNN engaged in a conspiracy to defame and injure Nunes. Under California law, conspiracy "[s]tanding alone [ ] does no harm and engenders no tort liability." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 457 (Cal. 1994). A conspiracy "must be activated by the commission of an actual tort," and a "bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement." Id. (internal quotation marks omitted). Specifically, in defamation cases, "plaintiffs have not been allowed to circumvent the statutory limitation[s]," such as those imposed by the retraction statute, by "proceeding on a theory other than defamation." Fellows v. Nat'l Enquirer, Inc., 721 P.2d 97, 101 (Cal. 1986). In light of Plaintiff's failure to plead a viable defamation claim, there is no underlying tort to support a viable claim for conspiracy here.[6]

---

[6] Plaintiff has also failed to plead facts sufficient to allege a conspiracy to defame. There are three elements to a claim of civil conspiracy under California law: "(1) an agreement to commit wrongful acts; (2) commission of the wrongful acts; and (3) damage resulting from commission of the wrongful acts." Harper v. Lugbauer, No. C 11-01306 JW, 2011 WL 6329870, at *5 (N.D. Cal. Nov. 29, 2011). Plaintiff has not pleaded any facts from which the Court may reasonably infer that CNN entered into an agreement with Joseph Bondy, Lev Parnas, and others, in order to defame and injure Nunes. See Iqbal, 556 U.S.

For these reasons, the Court grants the Defendant's motion insofar as it seeks to dismiss Plaintiff's conspiracy claim.

CONCLUSION

For the foregoing reasons, CNN's motion to dismiss the Amended Complaint is granted in its entirety.

This Memorandum Opinion and Order resolves docket entry no. 21. The Clerk of Court is respectfully directed to enter judgment dismissing the Amended Complaint and to close this case.

SO ORDERED.

Dated: New York, New York
          February 19, 2021

       /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      United States District Judge

---

at 678. In his opposition, Plaintiff identifies paragraphs 54-55 of the AC as alleging the purpose of the conspiracy along with its timing, participants and their roles, and the acts of defamation in furtherance of the plan. (See Opp. at 11.) Those paragraphs, however, contain only bare conclusory statements that, starting in October 2019, CNN "combined, associated, agreed or acted in concert with Parnas and his attorneys" and "engaged in a joint scheme the unlawful purpose of which was to destroy Plaintiff's personal and professional reputations . . . ." (AC ¶ 54.) "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Twombly, 550 U.S. at 556-57.