# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term, 2021
No. 21-637

DEVIN G. NUNES,
*Plaintiff-Appellant,*

*v.*

CABLE NEWS NETWORK, INC.,
*Defendant-Appellee.*

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/25/2022__

Appeal from the United States District Court
for the Southern District of New York

_____

ARGUED: NOVEMBER 30, 2021
DECIDED: APRIL 14, 2022

Before: PARK, NARDINI, and MENASHI, *Circuit Judges.*

_____

Plaintiff-Appellant Devin G. Nunes appeals the Southern District of New York's (Laura Taylor Swain, *Chief Judge*) dismissal of his defamation and civil conspiracy claims for failure to state a claim. We hold that the district court correctly predicted that the Virginia

Supreme Court, applying *lex loci delicti,* would determine that California law governs Nunes's claims.  Further, we affirm the district court's determination that the complaint failed to state claims for defamation and civil conspiracy to defame because Nunes (1) failed to demand retraction in accordance with California Civil Code § 48a, a substantive rule of decision, and (2) failed to plead special damages with the specificity required under Federal Rule of Civil Procedure 9(g).  Accordingly, we **AFFIRM** the judgment of the district court dismissing the complaint with prejudice.

JUDGE MENASHI dissents in a separate opinion.

————————————

STEVEN S. BISS, Law Office of Steven S. Biss, Charlottesville, VA, *for Plaintiff-Appellant.*

STEPHEN J. FUZESI (Kevin T. Baine, Nicholas G. Gamse, Matthew J. Greer, *on the brief*), Williams & Connolly LLP, Washington, D.C., *for Defendant-Appellee.*

————————————

WILLIAM J. NARDINI, *Circuit Judge*:

In this diversity action, Plaintiff-Appellant Devin G. Nunes sued Defendant-Appellee Cable News Network, Inc. ("CNN") for defamation and civil conspiracy in the United States District Court for the Eastern District of Virginia.  The case was eventually transferred to the Southern District of New York (Laura Taylor Swain, *Chief*

*Judge*), but all parties agree that the action remains governed by the choice-of-law principles of Virginia, the state law of the forum where this suit was originally filed. And so the question we face is: How would a Virginia state court have ruled in this case?

The district court dismissed Nunes's action for failure to state a claim based on two key holdings. First, it predicted that the Virginia Supreme Court would, in applying *lex loci delicti* to a multistate defamation suit like that brought by Nunes, determine that the "place of the wrong" is the state where the plaintiff is primarily injured as a result of the allegedly tortious online content, i.e., the plaintiff's domicile, absent strong countervailing circumstances. Applying this standard, the district court determined that California law governed Nunes's claims. Second, applying California's retraction statute for defamation claims—California Civil Code § 48a—the district court determined that Nunes failed to state a claim because he did not adequately allege a retraction demand or special damages as required

by section 48a and Federal Rule of Civil Procedure 9(g).  Nunes

challenges each of these conclusions on appeal.

For the reasons outlined below, we affirm the judgment of the

district court.

## I.  BACKGROUND

### A. Factual background.[1]

At the time of the alleged defamatory conduct, Devin Nunes

was a citizen of California and a member of the United States House

of Representatives.  He represented California for over twenty years

in different positions of public office and served in the House of

Representatives starting in 2003, where he represented California's

21st and, beginning in 2010, 22nd Congressional District.  Nunes was

the Ranking Member of the House Intelligence Committee, which

oversees matters pertaining to national security.  In his capacity as the

Ranking Member of that committee, Nunes played a leading role

---

[1] The following facts are drawn from Nunes's amended complaint, which we accept as true for purposes of this appeal.  *See Alix v. McKinsey & Co.*, 23 F.4th 196, 202 (2d Cir. 2022).

during the House of Representatives' first impeachment inquiry into U.S. President Donald J. Trump, which was announced on September 24, 2019.

CNN, a Delaware corporation headquartered in Georgia, operates a digital media network that publishes and disseminates news through a variety of platforms. CNN's network includes television broadcasts, the publication of articles online, and the operation of multiple social media accounts. Through these multimedia outlets, CNN delivers news every hour of every day to tens of millions of readers and viewers worldwide.

On November 22, 2019, CNN published an article written by reporter Vicky Ward. The article reported that Joseph Bondy, a lawyer for Lev Parnas (an indicted associate of Rudolph Giuliani), had stated that Parnas was willing to testify to Congress that Nunes had traveled to Vienna and met with former Ukrainian Prosecutor General Victor Shokin (the "Ward Article"). According to the article,

Parnas was willing to testify that Nunes's meetings were to discuss "digging up dirt" on former Vice President Joe Biden. Joint App'x at 29.

Around the same time that the article was published on CNN's digital network, Ward appeared as a guest on a CNN news program, *Cuomo Prime Time*, hosted by news anchor Chris Cuomo. Ward and Cuomo discussed the article and allegedly "published further defamatory statements" about Nunes's involvement in "looking for dirt on the Bidens." *Id.* at 35–36. Ward's article was also disseminated broadly through both CNN organizational social media accounts, such as the accounts for CNN International and CNN Politics, and the individual accounts of CNN employees.

**B. Procedural history.**

On December 3, 2019, Nunes filed this action in the United States District Court for the Eastern District of Virginia against CNN. Nunes brought claims of defamation and conspiracy to defame based on CNN's publication on its website of the Ward Article, the

discussion of the contents of that article on *Cuomo Prime Time*, and its republication through various social media platforms.

CNN moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, to transfer the case to the Southern District of New York under 28 U.S.C § 1404(a). Nunes filed an amended complaint,[2] and CNN renewed its motion to dismiss. The district court in the Eastern District of Virginia granted CNN's motion to transfer to the Southern District of New York, which then granted CNN's renewed motion to dismiss.

In dismissing Nunes's complaint, the court applied the choice-of-law doctrine of Virginia, the state of the transferor court. Because internet publication occurred simultaneously in multiple states, the district court predicted that the Virginia Supreme Court would, in applying *lex loci delicti*, look to the state of the plaintiff's greatest injury to determine the place of the wrong, which is presumptively the state

---

[2] For convenience, we will refer in this opinion to the amended complaint simply as the "complaint."

of a plaintiff's domicile in the absence of strong countervailing circumstances. Here, the district court found the place of the injury to be Nunes's home state of California and, under that state's law, Nunes failed to comply with "the statutory notice and retraction demand requirements" of California's "retraction statute," thus limiting his recovery to special damages. *Nunes v. Cable News Network, Inc.* (*CNN*), 520 F. Supp. 3d 549, 560 (S.D.N.Y. 2021); Cal. Civ. Code § 48a(a). The district court dismissed Nunes's complaint with prejudice after concluding that Nunes "fail[ed] to meet the minimum pleading requirements for special damages established by [Federal Rule of Civil Procedure] 9(g)." *CNN*, 520 F. Supp. 3d at 560. The court also determined that Nunes failed to state a conspiracy claim because "there [was] no underlying tort to support a viable claim for conspiracy." *Id.* at 561. Nunes timely appeals the district court's order dismissing his action with prejudice and entering judgment in favor of CNN.

## II. DISCUSSION

On appeal, Nunes challenges the district court's ruling on various grounds. First, he argues that the Virginia Supreme Court would, applying *lex loci delicti*, determine that New York is the "place of the wrong" because it is the place from which the allegedly defamatory statements were disseminated; and alternatively, that he was primarily injured in either the District of Columbia or Virginia, or at least that the choice-of-law determination cannot be made without discovery. Second, he argues that even if California law does apply, section 48a is procedural rather than substantive, and therefore does not apply under Virginia's choice-of-law rules; and that even if section 48a does apply, he ought to have been granted leave to further amend his complaint so he could plead special damages. Nunes also requests that we certify to the Virginia Supreme Court the question of how *lex loci delicti* applies to multistate defamation cases like Nunes's.

We agree with the district court that the Virginia Supreme Court would apply California law, including its retraction statute, to

Nunes's multistate defamation claim. Further, the court did not err in failing to *sua sponte* grant Nunes leave to amend. Accordingly, we affirm the district court's dismissal of the complaint with prejudice for failure to state a claim.

## A. Standard of review.

We review *de novo* a district court's choice-of-law determination and its grant of a motion to dismiss under Rule 12(b)(6). *See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (choice of law); *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (motion to dismiss).

## B. California law applies to Nunes's claims.

### 1. Lex loci delicti.

It is undisputed that Virginia's choice-of-law principles determine the substantive law governing Nunes's defamation claim because this case was transferred from the Eastern District of Virginia. "Transfers under [28 U.S.C.] § 1404(a) by a court that has jurisdiction are adjudicated in the transferee state under the law of the transferor

state." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 154 (2d Cir. 2019) (emphasis omitted); *see Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–97 (1941).

Virginia applies the doctrine of *lex loci delicti* to determine which state's substantive law applies in tort actions. *See Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 395 (2006). Under this approach, "the law of the place of the wrong governs all matters related to the basis of the right of action." *Id.* "The place of the wrong for purposes of the *lex loci delicti* rule . . . is defined as the place where the last event necessary to make an act liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (internal quotation marks omitted); *accord* Restatement (First) of Conflict of Laws § 377 (1934) (articulating the traditional *lex loci delicti* approach). "Where harm is done to the reputation of a person, the place of wrong is where the defamatory statement is communicated."

*Id.* § 377 note 5; *see also id.* illus. 7 ("A, broadcasting in state X, slanders B.  B is well and favorably known in state Y and the broadcast is heard there by many people conversant with B's good repute.  The place of wrong is Y.").  In other words, "[i]n defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties."  *Wells v. Liddy*, 186 F.3d 505, 521–22 (4th Cir. 1999).

As the district court noted, the Virginia Supreme Court has not expressly addressed how Virginia's *lex loci delicti* rule applies to a defamation action involving content that, at the time of broadcasting, simultaneously reaches viewers in multiple states and causes reputational harm in several jurisdictions.  *See CNN*, 520 F. Supp. 3d at 555.  When the Virginia Supreme Court "has spoken neither directly nor indirectly on the particular issue," a federal court sitting in diversity must "predict how that court would rule if presented with the issue."  *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins.*

*Co.*, 365 F.3d 263, 272 (4th Cir. 2004) (internal quotation marks omitted). "In so predicting . . . we may consider the teachings of treatises, as well as the practices of other states." *Id.* (internal quotation marks omitted); s*ee also Fed. Deposit Ins. Corp. v Nat'l Union Fire Ins. Co. of Pittsburgh*, 205 F.3d 66, 71 (2d Cir. 2000) ("Where there is no decision of a state's highest court directly, this court may look to any sources on which the state's highest court might rely in order to determine what that court may decide.").

Applying the principles set forth above, as well as those animating the Virginia Supreme Court's adherence to *lex loci delicti*, we hold that the district court correctly determined that under the circumstances presented in this case, the Virginia Supreme Court would apply the substantive law of the state where the plaintiff incurred the greatest reputational injury, with a presumption that absent countervailing circumstances, a plaintiff suffers the most harm in his state of domicile. *See CNN*, 520 F. Supp. 3d at 557.

13

We reject Nunes's contention that, in the context of simultaneous multi-state defamation cases, Virginia's choice-of-law principles require application of "the law of the state where the publication first occurred," understood by Nunes as the state from which the statement emanated.  Appellant's Br. at 29.  Under Virginia law, a statement is not considered to be published until it is seen or heard by a third party.  *See Food Lion, Inc. v. Melton*, 250 Va. 144, 150–51 (1995) (holding that publication requires a third party to have heard the words spoken); *Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 886 (W.D. Va. 2020) (collecting cases for the proposition that, in the context of purportedly defamatory emails, the place of publication is where the email was "opened and read"); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004) ("[P]ublication of a defamatory statement requires that it be communicated to a third party 'so as to be heard and understood by such person.'" (quoting *Thalhimer Bros. v. Shaw*, 156 Va. 863, 871

14

(1931))). Further, under the Restatement (First) of Conflict of Laws, which sets forth the traditional *lex loci delicti* doctrine, the "place of the wrong" for purposes of a defamation claim is where the content was received and harm to the plaintiff's reputation occurs. *See* Restatement (First) of Conflict of Laws § 377 note 5, illus. 7.

Nunes's proposed approach to apply "the law of the state where the defendant first publishes the defamatory statements," Appellant's Br. at 31, would focus on the place where the statements were made or where the article was prepared, which he claims was New York. This approach is in tension with the Restatement (First) of Conflict of Laws and precluded by Virginia's *lex loci delicti* rule, which instead looks to "where the last event necessary to make an act liable for an alleged tort takes place." *Quillen*, 789 F.2d at 1044 (internal quotation marks omitted). Here, that event was the receipt and viewing of the allegedly defamatory information by third parties, not CNN's broadcast of that content or the preparation of the article

which, by themselves, are insufficient for the completion of the tort of defamation. A consideration of where (or even whether) a third party viewed the content is crucial in determining whether and where a "publication" has occurred, which is an element of the tort of defamation, and does not impermissibly focus on the "effects" of the completed tort. *See* Restatement (Second) of Torts §§ 558, 577; *see also Food Lion*, 250 Va. at 150–51. The state in which the message was viewed, in turn, is the place of "the last event necessary" to complete the tort for the purposes of *lex loci delicti*. *See* Restatement (First) of Conflict of Laws § 377 note 5, illus. 7.

In any case, as a factual matter, we note that Nunes's theory—that New York is the place where the allegedly defamatory statements were made—is unsupported by the allegations of the complaint, to which we are limited on a motion to dismiss. The complaint says nothing about where the content was uploaded or where the relevant server resided, much less that either event occurred in New York. To

the contrary, the complaint asserts that "CNN published the CNN Article . . . in Virginia and around the World" and that CNN is "a Delaware corporation, headquartered in Georgia." Joint App'x at 18, 37. The only evidence in the record linking New York to the defamatory content is contained in the affidavits submitted by CNN in support of its motion to transfer. These affidavits assert that the allegedly defamatory article was prepared in New York, its writer lived in New York, and that CNN telecast its nightly show discussing the article from that state. Yet Nunes fails to explain why consideration of this material is appropriate on a motion to dismiss under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d) (requiring a court to treat "a motion under Rule 12(b)(6) . . . as one for summary judgment under Rule 56" if "matters outside the pleadings are presented to and not excluded by the court"); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (noting the exceptions to this rule, which allow a court to "consider extrinsic material that the complaint

17

incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice" (internal quotation marks omitted)).

Further, a straightforward application of the *lex loci delicti* rule to a multistate defamation claim is impracticable and unworkable. A statement that is instantaneously transmitted across the country could be viewed or heard simultaneously in several states, implicating the law of all jurisdictions where third parties were exposed to the information. *See Wells*, 186 F.3d at 527 (noting that the "application of the traditional *lex loci delicti* rule becomes cumbersome, if not completely impractical," when the allegations involve "widespread simultaneous publication of . . . allegedly defamatory statement[s] in many different jurisdictions"); *Nunes v. WP Co.*, 21-cv-506, 2021 WL 3550896, at *6–7 (D.D.C. Aug. 11, 2021) (explaining that "internet publications that are instantaneously made available to third parties in multiple states (indeed, around the globe) evade easy categorization under the *lex loci* rule" and that "[a]

patchwork of state laws could apply . . . to a radio show simultaneously broadcast across and heard in several states"); James R. Pielemeier, *Constitutional Limitations on Choice of Law: The Special Case of Multistate Defamation*, 133 U. Pa. L. Rev. 381, 394 (1985) ("[A] literal interpretation of [the *lex loci delicti*] approach would require application of the law of each state of circulation. This would necessitate separate instructions to the jury on the law of each state and a separate award of damages for the injury suffered in each state.").

Such a framework is plainly incompatible with the principles of "uniformity, predictability, and ease of application" animating Virginia's decision to adhere to *lex loci delicti* when making a choice-of-law determination. *McMillan v. McMillan*, 219 Va. 1127, 1131 (1979). We thus agree with the district court that the Virginia Supreme Court would—in the context of online defamatory content published simultaneously in multiple jurisdictions—follow the lead

of numerous other courts in *lex loci delicti* jurisdictions and apply the law of the state where a plaintiff incurs the greatest reputational injury, with a presumption that a plaintiff suffers the brunt of the injury in their home state.[3] *Accord, e.g., Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1353–54 (N.D. Ga. 2020); *Swinney v. Frontier Airlines, Inc.*, 19-cv-808, 2020 WL 3868831, at *3 (M.D.N.C. July 9, 2020); *Nobles v. Boyd*, 14-cv-214, 2015 WL 2165962, at *5 (E.D.N.C. May 8, 2015); *Ascend Health Corp. v. Wells*, 12-cv-83,

---

[3] We note here that three district courts confronted with this issue have reached a similar conclusion. *See WP Co.*, 21-cv-506, 2021 WL 3550896, at *7; *Gilmore v. Jones*, 370 F. Supp. 3d 630, 664–66 (W.D. Va. 2019); *Hatfill v. Foster*, 415 F. Supp. 2d 353, 365 (S.D.N.Y. 2006). Nunes points to *Depp v. Heard*, which held that in the context of online defamation, "the place of the wrong . . . is the place where the act of publication . . . to the internet occurred," which in that case was where the servers used to upload the article resided. 102 Va. Cir. 324, 2019 WL 8883669, at *5–6 (Va. Cir. Ct. July 25, 2019). We disagree with that court's conclusion that, under the law of Virginia, "[t]he last event to make [the defendant] liable for the alleged defamatory statements . . . was uploading [them] to the internet." *Id.* at *6. As we understand the case law of the Virginia Supreme Court, the act of uploading content to the internet is not enough to constitute the completed tort of defamation; instead, a third party must also receive and understand the content. In any event, as noted above, the complaint says nothing about where the content was uploaded or the relevant server resided.

2013 WL 1010589, at *2 (E.D.N.C. Mar. 14, 2013); *Miller v. Lear Siegler, Inc.*, 525 F. Supp. 46, 56 (D. Kan. 1981).

We also reject Nunes's argument that applying the law of the state where the plaintiff suffers the greatest reputational harm is an adoption of the "most significant relationship" test rejected by the Virginia Supreme Court.[4]  That choice-of-law doctrine considers various factors to determine the state with "the most significant relationship to the occurrence and the parties."  Restatement (Second) of Conflict of Laws § 150.  Thus, courts applying that test account for considerations other than the place of injury.  *See, e.g., Kinsey v. N.Y.*

---

[4] Nunes finds support for his argument in a pair of decisions noting the similarity between the "most significant relationship" test and an approach that looks to where the plaintiff suffered the greatest harm and presumes that location to be the plaintiff's domiciliary state.  *See Depp*, 102 Va. Cir. 324, 2019 WL 8883669, at *4–5 (finding that a test "defin[ing] the place of the wrong as the state where the plaintiff is primarily injured . . . . tracks closely to the underlying rationale behind the significant relationship test" (internal quotation marks omitted)); *Kylin Network (Beijing) Movie & Culture Media Co. v. Fidlow*, 16-cv-999, 2017 WL 2385343, at *3 n.2 (E.D. Va. June 1, 2017) (without deciding the issue, "view[ing] [the plaintiff's] argument" that his domicile is a relevant consideration under Virginia choice-of-law principles "with skepticism" because it is a factor under a provision of the Second Restatement that "Virginia has never adopted").

21

*Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (considering under New York choice of law "all the factors that might impact on the interests of various states in the litigation" such as "where the plaintiff suffered the greatest injury; where the statements emanated and were broadcast; where the activities to which the allegedly defamatory statements refer took place; and the policy interests of the states whose law might apply" (internal quotation marks omitted)). Indeed, Nunes's preferred approach tracks the Second Restatement by urging this Court to focus on acts preceding publication (such as facts about the article's preparation, posting, and authorship), rather than looking simply to the last event necessary to complete the tort: publication. *Cf.* Restatement (Second) of Conflict of Laws § 150 cmt. e (instructing courts to look also to "the state or states where the defendant did his act or acts of communication, such as assembling, printing and distributing" the material).

The district court's framework here, on the other hand, focuses on the place of injury specifically to identify the presumed locus of the final event needed to complete a multistate tort of defamation and permits consideration of countervailing factors only in rare circumstances.  And while the "most significant relationship" test similarly employs a presumption that "the state of most significant relationship will usually be the state where the person was domiciled at the time," Restatement (Second) of Conflict of Laws § 150(2), we do not believe that the Virginia Supreme Court would jettison its preference for consistency, predictability, and ease-of-application, along with its focus on the last event necessary to make an actor liable for a tort, merely to avoid any overlap with the Second Restatement.[5]

---

[5] Under our rules and those of the Supreme Court of Virginia, we may certify a question to that court "where a question of state law is 'determinative' of a claim before us and 'it appears that there is no controlling precedent on point in the decisions of [the Supreme Court of Virginia] or the Court of Appeals of Virginia.'"  *Casey v. Merck & Co.*, 653 F.3d 95, 101 (2d Cir. 2011) (quoting Va. Sup. Ct. R. 5:40(a)) (citing 2d Cir. Local R. 27.2).  "We do not certify every case that meets these criteria, but instead evaluate at least three factors in determining whether certification is appropriate: (1) the absence of authoritative state court decisions;

## 2. Place of injury.

With the above framework in mind, we hold that the district court correctly determined that California law applies to Nunes's claims because (1) the complaint alleges with substantial detail Nunes's connection to California and the importance of his reputation among the constituents in his district, and (2) nothing alleged in the complaint suggests countervailing circumstances sufficient to overcome the presumption that his greatest reputational harm occurred in his home state. We therefore disagree with Nunes's arguments to the contrary.

Nunes argues that "[e]ven if the Court were to follow" the district court's rationale, "the fact is that [his] injuries are concentrated

---

(2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *Id.* (internal quotation marks omitted). Because we find sufficient authority with which to predict the Virginia Supreme Court's disposition of this issue, and because we do not certify questions to a state's highest court "routinely"—indeed, "[t]he procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great," *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) (internal quotation marks omitted)—we decline to certify the issue here.

in Virginia or the District of Columbia where [he] works."
Appellant's Br. at 32 n.5. We are unpersuaded by this argument,
which is unsupported by the allegations in Nunes's complaint.
Nunes was domiciled in California and, as one of California's
representatives in Congress, was accountable to his constituents
there. The complaint describes his extensive ties to that state, not
Virginia or the District of Columbia. *See* Joint App'x at 16–17. To be
sure, the complaint does allege that Nunes suffered *some* reputational
harm outside of California, *see, e.g.*, *id*. at 61 (alleging that CNN
"intentionally and unlawfully imped[ed] . . . . [Nunes's] duties as a
United States Congressman, including the performance of his duties
as Ranking Member of the House Intelligence Committee during the
impeachment inquiry"); *id.* at 41 (alleging that CNN's goal "was to
inflict maximum damage to [his] reputation . . . and to cause him to
be removed from the impeachment inquiry"). But these allegations
are insufficient to overcome the presumption that Nunes suffered the

*greatest* harm in his home state of California among those constituents who were responsible for sending him to Washington, D.C., in the first place. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (requiring a plaintiff to offer more than "naked assertions devoid of further factual enhancement" (internal quotation marks omitted)).

Nunes's reliance on *Nunes v. WP Co.*, 2021 WL 3550896, also does not alter this outcome. The court in *WP* found that Nunes suffered the greatest harm in the District of Columbia because the defendant there, the Washington Post, "reports on local D.C. news and is more directed toward D.C. audiences than media outlets such as CNN." *Id.* at *8. Additionally, unlike the complaint here, the complaint in that case did not include factual allegations further supporting the presumption that Nunes suffered the greatest injury in California. Likewise, we reject Nunes's assertion that the choice-of-law issue here cannot be decided "without evidence," Appellant's Br. at 33–34, because, first, Nunes does not describe what is not

currently known but that could be determined through discovery and, second, he makes no cogent argument as to why any discovery would be required to adequately allege a reputational tort on the basis of widely publicized news articles and broadcasts.

In sum, the district court did not err in applying Virginia's *lex loci delicti* rule by determining where the plaintiff suffered the greatest injury, which is presumptively the state of plaintiff's domicile. The district court also correctly held that California law applied to Nunes's defamation action under this framework.

## C. The California retraction statute is a substantive rule of decision under Virginia law.

The district court determined that California's retraction statute, California Civil Code § 48a, is a substantive law and thus applies under Virginia's choice-of-law rules because "limits on recovery are substantive law." *CNN*, 520 F. Supp. 3d at 560 (internal quotation marks omitted) (citing *Price v. Stossel*, 07-cv-11364, 2008 WL 2434137, at *6 n.12 (S.D.N.Y. June 4, 2008) (noting that "[a]t least one

court in this District [] has found the [California retraction] statute applicable in diversity actions . . . and another has implied that the statute is substantive . . . .") (alterations in original)).  On appeal, Nunes does not challenge the district court's determination that he failed to request a correction, as required by section 48a, or its determination that he did not adequately plead special damages. Instead, he claims that the district court erred in applying that statute because it is procedural rather than substantive under Virginia law. We disagree.

To determine whether a state statute is a substantive rule of decision that a district court is bound to apply in a diversity action, we must discern whether "state conflict-of-law principles" require application of that statute if the case "were brought in [the applicable]

state court." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013).[6]

Under Virginia conflict-of-law principles, the *lex loci delicti* doctrine determines the choice of substantive law while procedural matters are governed by Virginia law. *See Hooper v. Musolino*, 234 Va. 558, 566 (1988). If a provision of a statute "goes to the very right of the action . . . it is a matter of substantive law." *Willard v. Aetna Cas. & Sur. Co.*, 213 Va. 481, 483 (1973). "[W]hile the right to recovery and the limits on recovery are substantive law, the distribution of the recovery is remedial law." *Walters v. Rockwell Int'l Corp.*, 559 F. Supp. 47, 49–50 (E.D. Va. 1983); *accord Spring v. United States*, 833 F. Supp. 575, 579 (E.D. Va. 1993) (finding that a statute involving "limits on recovery" is a substantive rule of decision); *see also Baise v. Warren*, 158

---

[6] Typically, a federal court must also consider whether the rule of decision "is 'substantive' within the meaning of *Erie*," which "is a question of *federal* law." *Liberty Synergistics Inc.*, 718 F.3d at 152. We do not reach this issue because Nunes argues only that Virginia law precludes the application of the California retraction statute.

Va. 505, 508 (1932) (noting that "the rights of the parties with respect to their causes of action are governed by the *lex loci*" while laws concerning "the admissibility of evidence and the enforcement of those rights are governed by the *lex fori*").

The California retraction statute provides that "[i]n any action for damages for the publication of a libel in a daily or weekly news publication, or of a slander by radio broadcast, plaintiff shall only recover special damages unless a correction is demanded and is not published or broadcast." Cal. Civ. Code § 48a(a). Moreover, the statute requires that such a request "be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous." *Id.* Under Virginia choice-of-law rules, we hold that this statute is substantive, not procedural. It substantially limits—and may even preclude—a defendant's liability for defamation and therefore alters the "rights of the [plaintiff] with respect to the[] cause[] of action." *Baise*, 158 Va. at 508; *see Jones v. R.S. Jones & Assocs.,*

30

*Inc.*, 246 Va. 3, 7 (1993) (finding a statute specifically limiting liability under a right of action to be substantive); *Hoilett v. Goodyear Tire & Rubber Co.*, 81 Va. Cir. 176, 2010 WL 11020458, at *3 (Va. Cir. Ct. 2010) (holding that a Maryland statutory cap on non-economic damages for wrongful death suits is substantive as a matter of Virginia law). Thus, the district court correctly applied the California retraction statute to this dispute. As noted above, Nunes makes no claim that he complied with the procedures outlined in section 48a.

Accordingly, the district court did not err in concluding that California Civil Code § 48a governs, that Nunes failed to comply with that statute because he did not make a timely demand for a correction from CNN, and that the complaint should therefore be dismissed with prejudice for failure to state a claim. Dismissal is required because, as the district court correctly found, the complaint does not allege special damages with the necessary specificity under Federal Rule of Civil Procedure 9(g), and instead merely alleges "special

damages" by including those words conclusorily in the general allegations of damages. [7]   Lastly, because, under California law, conspiracy "[s]tanding alone . . . does no harm and engenders no tort liability," *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994), the district court also correctly dismissed Nunes's civil conspiracy claim with prejudice.

## III.   CONCLUSION

In sum, we hold as follows:

(1) Under Virginia law, applying *lex loci delicti* to a defamation action involving content that simultaneously reaches viewers and causes reputational harm in several states, the "place of the wrong" is the district where the plaintiff

---

[7] We also reject Nunes's argument that the district court abused its discretion by not granting him leave to replead.  Nunes filed his amended complaint after receiving a preview of CNN's motion to dismiss, failed to request leave to further amend below, and does not specify facts that could remedy the deficiencies in his pleadings.  *See Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004) ("The [plaintiffs'] contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous.").

suffered the greatest injury, i.e., presumptively where the plaintiff was domiciled absent strong countervailing circumstances.

(2) Based on the allegations in the complaint and Virginia's *lex loci delicti* rule, California law governs Nunes's defamation and civil conspiracy claims.

(3) California's retraction statute, California Civil Code § 48a, is a substantive rule of decision under Virginia law. Nunes undisputedly failed to comply with that statute or to adequately allege special damages.

We therefore **AFFIRM** the judgment of the district court dismissing with prejudice Nunes's defamation and civil conspiracy claims.